UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

OSCAR HILLS, IV                             NO. 23-00047-BAJ-SDJ

## RULING AND ORDER

Before the Court is Defendant's **Motion to Dismiss (Doc. 111)**.[1] The Government opposes the Motion. (Doc. 113). Defendant filed a Reply Brief. (Doc. 115). For the following reasons, Defendant's Motion is **DENIED**.

## I.  FACTUAL BACKGROUND

On June 1, 2023, the Grand Jury for the Middle District of Louisiana handed down a four count Indictment against Defendant Oscar Hills, IV. (Doc. 1). Counts One and Two charge Defendant with wire fraud, in violation of 18 U.S.C. § 1343. (*Id.*). Counts Three and Four charge Defendant with unlawful monetary transactions, in violation of 18 U.S.C. § 1957. (*Id.*).

The Indictment alleges that Defendant devised a scheme and artifice to defraud Company 1 and the United States through the Small Business Administration ("SBA") by filing false and fraudulent applications for Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") funds. (*Id.* at 4). The Indictment further alleges that Defendant used those funds for his own personal enrichment. (*Id.*).

---

[1] Defendant filed additional exhibits accompanying his Motion to Dismiss. (Doc. 112).

**A. Indictment Allegations Regarding the PPP Loan.**

The Indictment contains the following allegations regarding the PPP Loan. On May 5, 2020, Defendant allegedly signed and submitted a false and fraudulent PPP Application to Company 1 in the name of Bootstate Financial Group ("Bootstate") seeking approximately $675,272 in PPP funds. (Doc. 1 at 5). Bootstate was allegedly a Louisiana non-profit corporation formed around April 17, 2020. (*Id.* at 1). Defendant was allegedly Bootstate's sole owner, officer, and registered agent. (*Id.*).

In the PPP Application, Defendant allegedly certified that Bootstate was "in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors." (*Id.* at 5). Defendant also allegedly certified that the funds would be used to "retain workers and maintain payroll," and for other business-related expenses. (*Id.*).

Defendant allegedly falsely represented that Bootstate had 40 employees and an average monthly payroll of $270,109. (*Id.*). Defendant also allegedly submitted an IRS Form 941 for the period of January to March 2020 indicating that: (1) Defendant paid Bootstate's employees more than $785,000 in wages, tips, and other compensation; and (2) Defendant withheld more than $101,000 in federal income taxes in the first quarter of 2020. (*Id.*). These statements were allegedly false. (*Id.* at 6).

As a result of Defendant's allegedly false representations in the PPP Application, Company 1 allegedly disbursed $675,272 in PPP loan proceeds to Defendant's bank account. (*Id.*). Defendant allegedly used the PPP loan proceeds to:

(1) purchase a 2010 Dodge Viper; (2) travel to, and stay in, Hawaii; and (3) for other non-business-related expenses. (*Id.*).

**B. Indictment Allegations Regarding the EIDL Loan.**

The Indictment contains the following allegations regarding the EIDL Loan. On March 30, 2020, Defendant allegedly submitted a false and fraudulent EIDL Application to the SBA in the name of Baton Rouge Teen Summit Foundation ("BRTS") seeking approximately $150,000 in EIDL funds. (Doc. 1 at 6). BRTS was allegedly a Louisiana non-profit corporation formed around March 2002. (*Id.* at 2). Defendant was allegedly BRTS's sole owner, officer, and registered agent. (*Id.*).

In the EIDL application, Defendant allegedly certified that he would use the EIDL funds solely as working capital to alleviate economic injury caused by the disaster occurring on January 31, 2020, and continuing thereafter. (*Id.* at 6–7). Defendant also allegedly represented that BRTS was a non-profit organization with 25 employees that performed outreach activities. (*Id.* at 7).

Defendant allegedly claimed that, for the 12-month period preceding January 31, 2020, BTS's operating expenses were $184,300, its cost of operations was $1,033,300, and its gross revenues were $50,000. (*Id.*). Defendant allegedly knew that BRTS did not have those revenues, costs, and expenses. (*Id.*). The SBA allegedly approved the BRTS EIDL Loan application based on Defendant's alleged misrepresentations. (*Id.*).

On July 7, 2020, the SBA allegedly authorized the disbursement of $149,900 in loan proceeds to an account held by Defendant in the name of BRTS. (*Id.*).

3

Defendant then allegedly used the proceeds for personal enrichment and expenses. (*Id.*). Defendant also allegedly used the money to pay Bootstate and the East Baton Rouge Parish Sheriff's Office for back property taxes. (*Id.* at 7–8).

The Indictment also contains forfeiture allegations. (Doc. 1 at 9–10).

## II. PROCEDURAL HISTORY

On June 1, 2023, Defendant was indicted for two counts of wire fraud and two counts of unlawful monetary transactions. (Doc. 1). Defendant appeared before the Magistrate Judge on June 29, 2023, and entered a plea of not guilty to each Count in the Indictment. (Doc. 8). The Magistrate Judge released Defendant on conditions. (Doc. 8). The case was later declared complex. (Doc. 16).

Defendant has been appointed several attorneys in this matter, each of whom have withdrawn. (Doc. 5; Doc. 7; Doc. 26; Doc. 27; Doc. 29; Doc. 39; Doc. 40; Doc. 79; Doc. 83; Doc. 84; Doc. 93). On November 18, 2024, Defendant moved to proceed pro se. (Doc. 89). Following a hearing, the Court granted Defendant's Motion, finding that his decision to proceed pro se was made knowingly, voluntarily, and intelligently. (Doc. 93; Doc. 94). The Court appointed standby counsel to assist Defendant. (Doc. 104). Because the Government was not present for the entirety of the hearing, the Court scheduled a Faretta hearing at the Government's request. (Doc. 118; Doc. 119).

During the Faretta hearing, the Court explained to Defendant the risks of proceeding pro se and the benefits of being represented by Counsel. (Doc. 124). The Court asked Defendant a series of questions to ascertain whether his decision to

proceed pro se was made knowingly, intelligently, and voluntarily. (*Id.*). After exhaustively describing the risks associated with proceeding pro se and the benefits of obtaining Counsel, the Court asked Defendant whether he still wanted to proceed pro se. (*Id.*). Defendant confirmed, under oath, that he wished to proceed pro se. (*Id.*). Thus, the Court found that Defendant's decision to proceed pro se was made knowingly, intelligently, and voluntarily. (*Id.*). The Court permitted Defendant to proceed pro se. (*Id.*).

Later that same day after the Faretta hearing, Defendant filed a Motion to Appoint Counsel. (Doc. 122). That Motion remains pending and is scheduled for a hearing. (Doc. 130).

Defendant filed the instant pro se Motion to Dismiss, asking the Court to dismiss the Indictment based on lack of sufficient evidence and selective and vindictive prosecution. (Doc. 111). For the following reasons, Defendant's Motion is denied.

## III. LEGAL STANDARD

### A. Failure to State an Offense

Defendant moves to dismiss the Indictment for failure to state an offense. (Doc. 111). Federal Rule of Criminal Procedure 12(b)(3)(B)(v) allows a defendant to move to dismiss an indictment that is legally defective for failure to state an offense. A court can rule on such a motion when the alleged infirmity is a legal question requiring no determinations of fact. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). The court must take the allegations of the indictment as true.

*United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998). To be legally sufficient, an indictment need only: (1) enumerate each element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecution. *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996); *see also United States v. Wilks*, No. CR 21-63-SDD-SDJ, 2023 WL 1978903, at *2 (M.D. La. Feb. 13, 2023) (Dick, C.J.).

### B. Selective Prosecution

In our criminal justice system, the Government retains broad discretion to prosecute individuals. *See Wayte v. United States*, 470 U.S. 598, 608 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Therefore, a selective prosecution claim is not a defense on the merits to the criminal charge, but instead, an independent claim that the prosecutor brought a charge for reasons forbidden by the Constitution. *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

To succeed on a claim of selective prosecution, a defendant must meet a "heavy burden." *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984) (quoting *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir. 1978)). First, a defendant must make a *prima facie* showing that he has been singled out for prosecution while

others "similarly situated who have committed the same acts have not been prosecuted." *Id.* (citing *United States v. Tibbetts*, 646 F.2d 193, 195 (5th Cir. 1981)).

Second, a defendant must demonstrate that "the government's selective prosecution of him has been constitutionally invidious." *Jennings*, 724 F.2d at 445. Even if a defendant demonstrates that he was singled out for prosecution, "selective prosecution, absent some invidious element, may not be challenged." *Id.* at n. 12 (citations omitted). To show "invidiousness," a defendant must demonstrate "that the government's selective prosecution is actuated by constitutionally impermissible motives on its part, such as racial or religious discrimination." *Id.* (citation omitted); *see also United States v. Young*, 231 F. Supp. 3d 33, 104 (M.D. La. Feb. 6, 2017) (deGravelles, J.) ("Thus, the Defendant must . . . demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations [such] as . . . the desire to prevent his exercise of constitutional rights." (quotation omitted)); *see also United States v. Sterling*, No. CR 20-00052-BAJ-RLB, 2021 WL 3271596, at *4 (M.D. La. July 29, 2021) (Jackson, J.).

### C. Vindictive Prosecution

"In general, there are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may prove actual vindictiveness by presenting objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). "Second, in certain circumstances, a defendant may show sufficient

facts to give rise to a presumption of vindictiveness." *Id.* "[C]ourts will apply [the presumption of vindictiveness] only where there exists a realistic likelihood of vindictiveness." *Id.* at 359. "The defendant has the burden of proving, by a preponderance of the evidence, prosecutorial vindictiveness." *Id.*; *see also United States v. Fields*, No. CR 20-76-SDD-SDJ, 2021 WL 357374, at *3 (M.D. La. Feb. 2, 2021) (Dick, C.J.).

## IV. DISCUSSION

Defendant asks the Court to dismiss the Indictment for insufficient evidence and for selective and vindictive prosecution. (Doc. 111). The Court will address each argument in turn.

### A. Insufficient Evidence.

Defendant seeks to dismiss the Indictment for insufficient evidence, citing purported evidence to "debunk" every allegedly false statement in the Indictment. (Doc. 111 at 4). Defendant claims that the evidence provided with his Motion exonerates him of all charges. (*Id.* at 31). The Government responds that a challenge to the sufficiency of the evidence requires a factual analysis and cannot be raised by pretrial motion. (Doc. 113 at 2). The Court agrees.

The Court has held: "[I]t is for the jury to test the sufficiency of evidence; the Government does not have to prove the allegations in the charging document." *United States v. Tucker*, No. CR 20-43-SDD-RLB, 2020 WL 4370132, at *2 (M.D. La. July 30, 2020) (Dick, C.J.). Courts "should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is

a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial." *Id.* (citing *United States v. Odiodio,* 2005 WL 2990906 at *14 (N.D. Tex. Nov. 7, 2005); *United States v. Maceo,* 873 F.2d 1, 3 (1st Cir. 1989) (internal quotation marks omitted)). Indeed, "[a] district court lacks authority under Fed. R. Cr. P. 12 to dismiss an indictment on the basis of a sufficiency-of-the-evidence defense that raises factual questions." *Id.* (citing *United States v. Richard,* 2016 WL 837268 at *2 (W.D. La. Feb. 5, 2016); *United States v. Mann,* 517 F.2d 259, 267 (5th Cir. 1975)). Because the Court cannot address factual questions or weigh Defendant's proposed evidence on a Motion to Dismiss, Defendant's Motion to Dismiss for insufficient evidence is **DENIED**. Defendant will be provided an opportunity to present evidence to the jury at trial.

### B. Selective and Vindictive Prosecution.

Defendant also moves to dismiss based on selective and vindictive prosecution. (Doc. 111). Defendant contends that the Government "went out of their way to get their man even when the evidence proved that Defendant did nothing wrong." (*Id.* at 19). Defendant describes the Government's investigation and subsequent Indictment as a "continued witch hunt." (*Id.* at 20). Defendant reasons that he presented the Government with evidence showing that he was innocent, but the Government persisted in its position and secured an Indictment against Defendant. (*Id.*).

Defendant also argues that the Government engaged in selective and vindictive prosecution by using two of the Defendant's clients as key witnesses.

(*Id.* at 21). Defendant refers to the Government's evidence as "suspect" and contends that the Government has abused its authority by pursuing this "baseless case." (*Id.* at 27–32). Defendant proceeds to argue the merits of his position. (*Id.* at 20–21).

The Government responds that Defendant's Motion contains baseless, conclusory allegations against the Government and the prosecuting attorneys without ever citing facts or the applicable law in this area. (Doc. 113 at 4). The Government also argues that although Defendant's Motion treats the selective and vindictive prosecution claims the same, the legal standard, and therefore the analysis, differs with respect to each claim. (*Id.*). The Court will address Defendant's arguments concerning vindictive and selective prosecution in turn.

Turning first to vindictive prosecution, Defendant has the burden of proving prosecutorial vindictiveness by a preponderance of the evidence. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008) (internal citations omitted). In general, there are two ways in which a defendant can prove a claim of vindictiveness. First, a defendant may prove actual vindictiveness by presenting objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights, such as pursuing an appeal. *Id.* (citing *United States v. Goodwin,* 457 U.S. 368, 384 & n. 19 (1982); *United States v. Johnson*, 91 F.3d 695, 698 (5th Cir. 1996)). Second, in certain circumstances, a defendant may show sufficient facts to give rise to a presumption of vindictiveness. *Saltzman*, 537 F.3d at 359.

Courts may only apply the presumption of vindictiveness when there exists a

"realistic likelihood of vindictiveness." *Id.* (internal quotations omitted). To determine whether the presumption of vindictiveness applies, "the court must examine the prosecutor's actions in the context of the entire proceedings." *Id.* at 359–360 (internal citations omitted). The Fifth Circuit has held:

> There is no presumption of vindictiveness if in the context of the entire proceedings "any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision . . . was motivated by some purpose other than a vindictive desire to deter or punish appeals."

*Id.* at 360 (citing *United States v. Wells*, 262 F.3d 455, 466–67 (5th Cir. 2001); additional citations omitted). Even if a defendant establishes a realistic likelihood of vindictiveness, the Government still has an opportunity to proffer legitimate, objective reasons for its conduct. *Id.*

Here, Defendant has offered no evidence to show that the Government has engaged in vindictive prosecution. Defendant's argument that the "Government pitched [a] false narrative to the grand jury and acquired a fraudulent indictment[,]" that the "Government still convened a grand jury and indicted" after Defendant provided the Government with evidence "showing Defendant was innocent" does not persuade otherwise. (Doc. 111). Defendant will have an opportunity to present evidence at trial before a jury. The Court cannot find that Defendant's arguments bearing on the merits of his defense provide a basis for vindictive prosecution.

Defendant relies on the same arguments to support his claim of selective prosecution. The United States Supreme Court has made clear, however, that a selective prosecution claim is not a defense on the merits to the criminal charge, but

instead, an independent claim that the prosecutor brought a charge for reasons forbidden by the Constitution. *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Defendant has offered no evidence to indicate that the Government brought the Indictment for reasons forbidden by the Constitution, much less sufficient evidence to satisfy Defendant's "heavy burden" to prevail on a defense of selective prosecution. *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984).

Accordingly, Defendant's Motion to Dismiss for selective or vindictive prosecution is **DENIED**.

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion to Dismiss (Doc. 111)** is **DENIED**.

Baton Rouge, Louisiana, this 12th day of May, 2025

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**